# COURT OF APPEALS OF VIRGINIA

## Record No. 0246-25-1

WEBB'S TRUCK LEASING CORP.
v.
CHKD THRIFT STORES, LLC

Present: Judges AtLee, Chaney and Bernhard
Argued at Norfolk, Virginia

Opinion Issued July 21, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Lawson Wayne Farmer, Judge

Rachel L. Yates (Yates Appellate Law, on briefs), for appellant.

Angela Boice Axselle (Joel M. McCray; Wimbish Gentile McCray & Roeber PLLC, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE VERNIDA R. CHANEY

Webb's Truck Leasing Corp. ("Webb") appeals the circuit court's judgment granting

CHKD Thrift Stores, LLC's ("CHKD") warrant in detinue and dismissing Webb's claims for

quantum meruit and unjust enrichment.  Webb also challenges the court's exclusion of evidence

concerning the parties' prior course of dealing, historical rates, and certain out-of-court statements.

Webb contends that, even without an enforceable post-termination agreement, it was entitled to

compensation for post-termination storage, delivery, and related services and could retain CHKD's

property until paid.  Finding no reversible error, this Court affirms.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

CHKD Thrift Stores "receive[s] donated goods, sell[s] those goods and remit[s] the net proceeds to" benefit the Children's Hospital of the King's Daughters. For years, CHKD and Webb operated under an oral agreement under which Webb stored and transported trailers containing CHKD's excess charitable-donation inventory as directed by CHKD. R. 496, 499, 580.

In March 2018, CHKD notified Webb that the arrangement was terminated and demanded return of CHKD's charitable donations. Webb did not return the donations, and in July 2018, CHKD again notified Webb that the arrangement was terminated, requested access to Webb's trailers to retrieve the donations, and paid Webb's outstanding invoices totaling $60,694.76 in an effort to make a "clean break." R. 511-13, 752-55. Webb still did not permit CHKD to retrieve the donations nor did Webb make efforts to return the trailers.

On July 1, 2019, CHKD, through counsel, sent Webb another letter documenting the prior termination letters, declaring that all agreements between the parties would conclude on August 31, 2019, and demanding return of the charitable donations by that date. R. 515-17, 756-58. The letter enclosed payment of $73,425 and stated that the payment "represent[ed] CHKD's payment in full and satisfie[d] any and all obligations" of CHKD to Webb. R. 757. The letter added that, after August 31, 2019, CHKD and Webb would have "no further agreement or professional relationship," that CHKD would "not pay any additional money" to Webb, and that CHKD would have "[n]o obligation of any kind" to Webb after that date. R. 757. Webb admitted that it cashed the check and that, as of August 31, 2019, CHKD did not owe Webb any debt related to the CHKD donations. R. 521-22, 641.

---

[1] On appeal from a bench trial, "we view the evidence in the light most favorable to the prevailing party." *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003).

At the time of the termination of the parties' agreement, Webb had 75 trailers containing CHKD's charitable donations. R. 519, 544. For a 60-day return window, CHKD offered to pay a fixed transportation fee of $165 per trailer for returned donations. R. 557, 757. Webb returned none of the donations within that period.

On August 23, 2019, Ms. Webb, who testified on Webb's behalf, Dennis Ryan, the retired Chief Financial Officer for Children's Health System and former CHKD corporate manager, and Buzz Heidt, chairman of the CHKD Board, met to discuss the return of the trailers. The parties agreed that CHKD wanted all of its charitable donations returned as soon as possible. Ms. Webb acknowledged that after termination she had not sent a monthly bill and had "never sent any lien notices to CHKD Thrift." R. 573, 639.

Between October 2019 and March 2020, Webb returned approximately 40 of the 75 trailers to CHKD. R. 543-44, 550, 552, 556. During that same period, Ryan sent an email in December 2019 stating that CHKD was "prepared to pay two months, as discussed, at $7,000 a month flat fee, plus the transportation costs of those deliveries." R. 545. CHKD then paid Webb $21,260 by check dated January 5, 2020. R. 544. Ryan testified that the payment was a "generous gesture" and not for storage because the "whole arrangement was for delivery, not storage." R. 545, 570. He explained that CHKD's prior offer had been $42,000 for full delivery of all trailers, that the trailers returned by the time of the January payment represented roughly one-third of that total, and that $21,260 reflected approximately one-third of the $42,000 plus $7,000 in delivery fees. R. 544-45. Webb stopped returning donations in March 2020 and still retained 35 trailers at trial.

This appeal arises from two related suits tried together in the circuit court. In the first, CHKD sought return of its charitable donations through a warrant in detinue. In the second,

Webb sued CHKD for breach of contract,[2] quantum meruit, and unjust enrichment, alleging that the parties had entered into a new oral agreement for continued storage and delivery beginning in September 2019.

After a bench trial, the circuit court found that CHKD had terminated the parties' arrangement, paid what it owed, and demanded return of its property. R. 710-12, 717-18. The court found that there was no post-termination agreement, observing that the testimony concerning the alleged material terms was "all over the place." R. 712. The court stated, "You know why you don't have a written agreement when both sides want a written agreement? It's because both sides haven't agreed." R. 715. The court also found that CHKD had been "screaming from the rooftops since 2018[:] We don't want to do business with you anymore. Give us our stuff back." R. 712. The court granted CHKD's warrant in detinue and dismissed Webb's claims.

ANALYSIS

I. Standard of Review

A circuit court's factual findings following a bench trial are "entitled to the same weight as a jury verdict." *Dunbar Grp., LLC v. Tignor*, 267 Va. 361, 366-67 (2004). This Court defers to those findings and will not set them aside unless they are plainly wrong or without evidence to support them. *Id.* at 367. We also presume that the circuit court resolved factual ambiguities and conflicting inferences in favor of the prevailing party. *See Hill v. Commonwealth*, 297 Va. 804, 808 (2019).

To the extent that this appeal presents questions of law, we review those issues de novo. *Pae Nat'l Sec. Sols., LLC v. Constellis, LLC*, 83 Va. App. 252, 264 (2025). We review

---

[2] Webb does not challenge the dismissal of its breach of contract claim on appeal. Its assignments of error challenge the detinue ruling, the dismissal of the quantum meruit and unjust enrichment claims, and the exclusion of evidence.

evidentiary rulings for abuse of discretion. *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016). Even if an evidentiary ruling is erroneous, reversal is not required when the error is harmless. *Barkley v. Wallace*, 267 Va. 369, 374 (2004); Code § 8.01-678.

## II. Webb's Equitable Theories and Warrant in Detinue

Webb primarily argues that, once the circuit court found no binding post-termination agreement, the law required CHKD to pay reasonable compensation for post-termination storage, delivery, and related wind-down services. At oral argument, Webb emphasized that returning the donations was not merely a matter of making the trailers available; return required labor, drivers, transportation, unloading, storage, land rent, tolls, and other costs. Webb also argues that CHKD's January 2020 payment and prior offers showed that CHKD recognized an obligation to compensate Webb for those wind-down services. Webb further argues that because CHKD owed additional compensation, Webb had a warehouseman's lien and could retain CHKD's property until paid. These arguments depend on treating the post-termination period as one in which CHKD requested or accepted compensable continued storage, delivery, or other wind-down services while the parties disputed price. The court found otherwise. It found that CHKD terminated the arrangement, paid what it owed, demanded return of its property, and did not agree that Webb could continue storing, delivering, or retaining CHKD's donations on Webb's terms. R. 710-12, 717-18.

### A. *The circuit court was entitled to reject Webb's equitable theories.*

The circuit court rejected the factual predicates underlying Webb's quantum meruit and unjust enrichment claims. CHKD's July 1, 2019, letter expressly stated that the enclosed payment "represent[ed] CHKD's payment in full and satisfie[d] any and all obligations" and that, after August 31, 2019, CHKD would have "no further agreement or professional relationship." R. 757. The same letter stated that CHKD would "not pay any additional money" and would

- 5 -

have "[n]o obligation of any kind" to Webb after August 31, 2019. R. 757. Webb admitted that, as of August 31, 2019, CHKD had "paid what they owed" and did not owe Webb any debt related to the CHKD donations. R. 641. Based on that evidence, the court found that "[t]he slate was clean" and Webb "had one option and that was to return the property." R. 710-11.

Webb argues that the post-termination course of conduct required a different result. Webb contends that CHKD did not merely ask Webb to make the trailers available for pickup, but instead requested a wind-down of a decades-long commercial arrangement involving 75 loaded trailers. Webb emphasizes that returning the donations required labor, drivers, transportation, unloading, storage, land rent, tolls, and other costs. Webb also relies on the fact that it returned approximately 40 trailers between October 2019 and March 2020 and that CHKD paid $21,260 in January 2020 after Ryan had referred to two months at a $7,000 monthly flat fee plus transportation costs. From that evidence, Webb concludes that CHKD accepted and benefited from Webb's post-termination storage, delivery, and wind-down services and that the circuit court should have determined reasonable compensation rather than treating those services as uncompensated.

The circuit court was not required to accept Webb's characterization, and its factual findings matter because quantum meruit and unjust enrichment do not arise merely because a claimant performed work or incurred costs. Quantum meruit applies when services are performed at the request of another, without agreed terms, and the law implies a promise to pay the reasonable value of the services. *See Mongold v. Woods*, 278 Va. 196, 204 (2009). Unjust enrichment requires proof that the plaintiff conferred a benefit on the defendant, that the defendant knew of the benefit and should reasonably have expected to repay it, and that the defendant accepted or retained the benefit without paying for its value. *See Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008). Thus, Webb had to establish more than the

- 6 -

value of storage or delivery. It had to establish that CHKD requested the services, or accepted and retained a benefit under circumstances making nonpayment unjust.

The circuit court was entitled to find that Webb failed to make that showing. CHKD wanted its donations returned. CHKD did not agree that Webb could continue storing or delivering the donations on Webb's terms, or withhold them until CHKD paid additional amounts. The court made that point directly when it asked: "What is it? That she kept their property for five years when they kept asking for it back? That's how they've been unjustly enriched? She had one option in July. Give it back." R. 717. The court further explained that CHKD may have had to pay someone "to store it or to move it or whatever," but that was CHKD's decision to make, not Webb's. R. 718.

The court's factual findings also defeat Webb's efforts to characterize this case as one about unpaid wind-down compensation. The court did not find that CHKD requested continuing storage, delivery, or other wind-down services while leaving only the price unresolved. Rather, the court found that CHKD demanded return of its property and that Webb had no right to continue to hold it. Webb's post-termination deliveries did not require the circuit court to find an implied promise to pay for continued storage, delivery, or wind-down services. Nor did the presence of the post-termination deliveries require the court to find that CHKD accepted or retained the benefit of Webb's continued possession. The court could reasonably distinguish between CHKD's willingness to facilitate the return of its donations and Webb's claimed right to keep storing those donations at whatever rate Webb deemed appropriate. And to the extent that Webb performed delivery services that CHKD requested, the court was entitled to find them compensated. CHKD paid Webb $21,260 for the returns it accepted, a sum that Ryan tied to the parties' contemplated delivery figure and delivery fees rather than to continued storage. R. 544-

45, 570. Returning property Webb was obligated to return once the slate was cleaned conferred no benefit on CHKD for which the law implies a promise to pay.

Webb's reliance on *T. Musgrove Constr. Co. v. Young*, 298 Va. 480 (2020), does not compel a different result. *Musgrove* recognizes that, absent an enforceable contract, equitable principles may require payment for a benefit conferred or retained. *Id.* at 485-86. However, *Musgrove* does not require compensation where the circuit court, as factfinder, determines that the defendant did not request the alleged services and did not accept or retain the asserted benefit. *Id.* The circuit court here found that CHKD ended the relationship, paid what it owed, and demanded return of its own property. Those findings are owed deference on appeal and support the court's rejection of Webb's quantum meruit and unjust enrichment claims.

B. *CHKD's January 2020 payment did not establish an implied payment obligation, and Webb had no right to retain the donations under a warehouseman's lien.*

Webb argues that CHKD's January 2020 payment of $21,260 shows that CHKD recognized an implied obligation to pay for post-termination wind-down services. Webb emphasizes that the payment followed Ryan's December 2019 email stating CHKD was "prepared to pay two months, as discussed, at $7,000 a month flat fee, plus the transportation costs of those deliveries." However, the circuit court was not required to draw that inference. CHKD characterized the payment as a "generous gesture," and Ryan testified that "the whole arrangement was for delivery, not storage." Given the court's factual findings, it could reasonably view CHKD's payment as an effort to facilitate return of the donations, not as evidence of a new agreement or an implied obligation to continue paying Webb for post-termination storage, delivery, or possession of CHKD's property. That the parties were still discussing rates in early 2020 reflects the absence of any agreement, not CHKD's acknowledgment of an obligation; ongoing negotiation is the antithesis of a meeting of the minds. The payment amount is consistent with that view. Ryan testified that the $21,260

reflected approximately one-third of CHKD's contemplated $42,000 delivery payment, corresponding to the roughly one-third of the trailers that had been returned at the time, plus delivery fees, not compensation for ongoing storage of the remaining trailers. R. 544-45.

The court's factual findings also undermine Webb's warehouseman's lien argument. Code § 8.7-102 defines a "[w]arehouseman" as "a person engaged in the business of storing goods for hire." Code § 8.7-209(1) provides that a warehouseman has a lien on goods covered by a warehouse receipt or storage agreement for charges including "storage or transportation," "labor." The lien thus secures charges and attaches to goods held under a receipt or storage agreement. Neither predicate is present here: Webb admitted that CHKD owed no debt as of termination, and the court found no storage agreement between the parties. No warehouseman's lien arose. R. 641. Even if one had, Code § 8.7-209(5) provides that "[a] warehouseman loses his lien on any goods that he voluntarily delivers or unjustifiably refuses to deliver."

Assuming without deciding that Webb otherwise qualified as a warehouseman, the record supports the circuit court's conclusion that Webb had no right to retain CHKD's property. Webb did not send post-termination monthly bills, lien notices, or similar notices. Ryan testified that CHKD never received "any kind of lien notice or anything like that" after termination. R. 573. Ms. Webb likewise acknowledged that Webb did not send a bill and had "never sent any lien notices to CHKD Thrift." R. 639. The circuit court also found that once CHKD paid the outstanding balance, Webb "had one option and that was to return the property." R. 711, 717. Given those factual findings, which are not plainly wrong, Webb cannot rely on Code § 8.7-209 to justify continued retention of CHKD's charitable donations. The court thus did not err in granting CHKD's warrant in detinue.

III. The Circuit Court's Evidentiary Rulings

Webb also challenges the circuit court's exclusion of evidence on the parties' prior course of dealing, historical rates, the unsigned 2016 contract, and certain out-of-court statements.

A. *The circuit court did not abuse its discretion in excluding the unsigned 2016 contract, and any exclusion of additional course-of-dealing evidence was harmless.*

Webb argues that the circuit court improperly excluded evidence of the parties' historical course of dealing and prior rates. "On appeal, a court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Coleman v. Commonwealth*, 87 Va. App. 160, 169 (2026) (quoting *Drexel v. Commonwealth*, 80 Va. App. 720, 739 (2024)). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *R.T. v. Commonwealth*, 86 Va. App. 293, 299-300 (2025) (quoting *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Id.* at 300 (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

The record does not support the broad exclusion Webb describes. When Webb sought to ask about older written contracts, the circuit court questioned the relevance of agreements predating the alleged 2019 oral agreement, explaining that Webb's claim concerned a "new agreement entered into in 2019." R. 584-87. The court stated, "For quantum meruit, the only expectations are what was the agreement in 2019. It's not what we have done in the last -- since 1989." R. 585. However, when Webb referred to "historical rates," the court stated, "I don't disagree that that's relevant." R. 586. The court thus did not categorically exclude all historical rate evidence.

- 10 -

Webb also argues that the circuit court erred by excluding the unsigned 2016 contract. Assuming without deciding that Webb preserved this issue for appeal, the circuit court did not abuse its discretion. Webb's theory at trial was that the parties entered into a new oral agreement after termination in 2019. The court could reasonably conclude that an unsigned contract from 2016 had limited relevance to whether the parties reached a post-termination agreement in 2019 or whether CHKD requested continued storage or delivery after terminating the prior arrangement. The court stated that Webb claimed the parties "reached a different agreement in 2019" and that Webb had already "told [the court] what the costs [were]." R. 617. It then sustained CHKD's objection "as to some contract that was drafted but not signed in 2016." R. 617. The court also could treat the document as cumulative because Webb testified about historical terms it considered relevant.

In any event, any exclusion was harmless. Non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "In a civil case, the erroneous exclusion of evidence is reversible error when the record fails to show plainly that the excluded evidence could not have affected the [result]." *Barkley*, 267 Va. at 374. "If, when all is said and done, [it is clear] that the error did not influence the [factfinder], or had but slight effect, . . . the judgment should stand." *Driscoll v. Hunter*, 59 Va. App. 22, 36 (2011) (alterations in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)).

Here, the excluded evidence concerned historical dealings and valuation. However, Webb's equitable claims did not fail because the circuit court lacked historical valuation evidence. They failed because the court found CHKD terminated the arrangement, paid what it owed, repeatedly demanded return of its donations, and did not request continued storage, delivery, or possession under Webb's terms. Even if additional historical evidence might have

- 11 -

assisted Webb on valuation in the abstract, it would not undermine the dispositive factual findings that CHKD wanted its property returned and that Webb had no basis to continue to hold it.

At oral argument, Webb argued that the historical rate evidence was the best evidence of reasonable value, but the circuit court's ruling did not rely on the amount of a reasonable charge; it depended on the court's finding that CHKD demanded return of its property and did not request continued storage, delivery, or possession on Webb's terms. Thus, any exclusion of additional historical evidence did not affect the outcome.

B. *The excluded out-of-court statements do not warrant reversal.*

Webb next argues that the circuit court improperly excluded statements that were admissible as admissions by a party opponent. Virginia Rule of Evidence 2:803(0) provides that certain statements are "not excluded by the hearsay rule," including "[a] statement offered against a party" that is "the party's own statement," "a statement by a person authorized by the party to make a statement concerning the subject," or "a statement by the party's agent or employee, made during the term of the agency or employment, concerning a matter within the scope of such agency or employment."

Webb's appellate argument is broader than the single Ryan exchange addressed below. Webb argues that the excluded testimony concerned statements by CHKD representatives or agents, including Ryan, Heidt, and Paul Sharp.[3] Webb contends that those statements were admissible under Rule 2:803(0) as party-opponent admissions. It also argues that the excluded statements would have supported its version of the August 2019 negotiations, including the time needed to unload and return trailers, whether CHKD could accept only a limited number of trailers at a time, whether CHKD requested or accepted continued storage and delivery during

---

[3] Paul Sharp represented SYR Inc., the company that managed CHKD.

the wind-down, and whether the parties discussed additional trailers or future business as part of negotiating a more favorable rate. Webb maintains that it preserved the issue by invoking the "party representative" ground and that, under Code § 8.01-384, it was not required to repeat the same argument after the circuit court had ruled.

However, Rule 5A:18 provides that "[n]o ruling of the [circuit] court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "Rule 5A:18 requires a litigant to make timely and specific objections, so that the [circuit] court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)).

Webb's hearsay argument focuses on excluded testimony about discussions with CHKD or SYR representatives, including statements attributed to Ryan, Heidt, Sharp, and unidentified speakers referred to as "they." R. 583-84, 587-91, 596-98. However, in the earlier challenged exchanges, Webb did not invoke the party-opponent exception, or any hearsay exception, when CHKD objected. R. 583-84, 587-91, 596-98. The court also instructed counsel to avoid vague references to "we" and "they" and to "be specific about who [Webb was] speaking with." R. 588-91. Since Webb did not make the party-opponent argument to the circuit court during those exchanges, Rule 5A:18 bars Webb from relying on that argument for the first time on appeal.

Webb further argues that the substance of the excluded testimony was adequately presented in its proffer to the circuit court. We assume without deciding that the substance of the excluded testimony was sufficiently proffered. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) ("[I]n cases where the ability of the Court to review an issue on appeal is in doubt, we may 'assume without deciding' that the issue can be reviewed provided that this permits us to

- 13 -

resolve the appeal on the best and narrowest grounds."). However, that does not cure Webb's failure to preserve its hearsay argument. Webb did not present its "party-opponent" argument in its proffer or during the earlier challenged exchanges. Nor did it obtain a ruling from the circuit court on the hearsay exception or give the court a chance to rule intelligently on the issue. A proffer of substance does not substitute for the adequate preservation of the admissibility argument.

Code § 8.01-384 also does not alter our conclusion. Although a party generally need not repeat an objection once the court has ruled, Webb did not state the party-opponent ground during the earlier challenged exchanges. The one clearer instance in which Webb raised a "party representative" argument occurred later in trial, when Webb asked Ms. Webb about Ryan's response to her assertion that September and October 2019 storage fees were due. At that point, CHKD objected on hearsay grounds, and Webb responded that Ryan was a "party representative." R. 648. That later argument preserved, at most, the ruling made in that exchange; it did not retroactively preserve a different theory for earlier excluded statements.

Assuming without deciding that the court erred by excluding Ryan's testimony, any error was harmless. *See* Code § 8.01-678; *Barkley*, 267 Va. at 374; *Driscoll*, 59 Va. App. at 36. Here, the substance of the September and October 2019 payment dispute came in through other evidence. Webb read the relevant emails into evidence, testified that she told Ryan that CHKD owed September and October 2019 storage fees, and later elicited from Ryan that Ms. Webb had asked CHKD to pay storage fees for those months. R. 558-59, 648-50. Ryan explained CHKD's position that there were no "prior months" because "[t]hat agreement was terminated effective August 31st." Ms. Webb also testified that CHKD did not pay her for those months, though she acknowledged that she "got a check eventually."

Moreover, the circuit court's ruling did not depend on the excluded statements. The court relied on its factual findings that CHKD terminated the relationship, paid what it owed, repeatedly demanded return of its donations, and did not request continued storage, delivery, or possession on Webb's terms. Since the same relevant information came in through other evidence and the excluded testimony did not affect the court's core reasoning that the contract obligations had ceased, any error was harmless. *See Driscoll*, 59 Va. App. at 36.

CONCLUSION

The circuit court's judgment rests on factual findings supported by the record: CHKD terminated the parties' arrangement, paid what it owed, demanded return of its charitable donations, and did not agree to continued storage, delivery, or possession on Webb's terms. Those findings defeat Webb's detinue defense, warehouseman's lien argument, and equitable claims for quantum meruit and unjust enrichment. The challenged evidentiary rulings likewise do not require reversal because Webb has not shown reversible error or prejudice affecting the outcome.

For these reasons, this Court affirms the circuit court's judgment.

*Affirmed.*